et al. So, Mr. Terkel, am I pronouncing that right? Terkel, Your Honor. Terkel. I'm a little traumatized from that last. Well, that's, you know, you sit here for a day and you hear a lot of different cases. Yes, Your Honor. Types of cases, for sure. But every case is important in a different way, or its own way. So, you've got ten minutes, but you've reserved two minutes for rebuttal. So, you may proceed. May it please the Court, my name is Alvaron Terkel. I'm from Ballinstall PC, and I represent the defendant appellants. We ask the Court to reverse District Court's decision for default judgment under the lenient standards of federal rules, so Procedure 55C, and upon the law and arguments in the brief, also on 60B. Importantly, and I think that the docket sheet bears a review for this, the defendant's default was not willful. What you have here is a. Willful? They had a lawyer at multiple proceedings and yet never filed an answer, never filed a post-complaint motion to dismiss. And didn't even have the lawyer file notices of appearance, right? That is correct. How is that not willful? I mean, so they clearly knew about the complaint, didn't answer. Nonetheless, followed the proceedings and still persisted in not complying with the federal rules of civil procedure. How is that not willful? It's not willful because the defendants, this is not a case where the defendant, where the appellants, failed to show, the appellants did show up repeatedly. They did not avoid the suit. And as the record will show, they were engaged in discussions with the plaintiffs. The defendants certainly made a mistake and they certainly did not answer. But even at 8-276, which is to the docket, the complaint was filed on March 21st of 2022. There were multiple appearances. The defendants appeared. They were retaining counsel. That was stated to the district court. And then all of a sudden, this small company against this very large company is faced with a default on 4-27-22. Yes, Your Honor. If you look at 8-276 of the record, which is an order from district court, you can see that even the court says that the defendants, or rather the appellants, are to advise the court if a resolution of the motion or case has been reached. The district court knew that the parties were discussing the case and were attempting to resolve it. But on 4-27-2022, there was a clerk's entry of default. That comes right after 4-26-22, which is the report and recommendation for preliminary injunction, et cetera. Again, the complaint is filed March 21, 2022. Defendants appear. They do not avoid the suit. They are there every single time. What does that mean, they did not avoid the suit? What does that mean? It means they were not running from the suit. They didn't claim they weren't served. They didn't answer. They didn't make any questions or make any motion in lieu of an answer. Their lawyer didn't even file a notice of appearance. Their attorney did. The court says on April 14, the conference was held on the motion for the preliminary injunction. Despite previous representations to the court, Mr. Gartunian still has not filed a notice of appearance, and no opposition to the pending motion has been filed. The court directs that if he is to appear on behalf of all four defendants, it should be done by 6 p.m. today. This happens again and again. It did. That doesn't seem like cooperative behavior. It may be neglect, and that may weigh, but that is not a willful default. That is the client attempting to— How is that neglect? Because— They're directly ordered to file an appearance. The attorney was directed to file an appearance if retained, and you can see in the record in the docket when counsel was retained, they did file a notice of appearance. That was on June 3, 2022 and June 6, 2022. Prior to that, counsel was retained by these appellants to attempt to negotiate a settlement of this action. Remember, you have a small-time franchise. It doesn't work that way. I mean, our case law is very clear. If you don't deny that you received a complaint or a notice of default, and you don't contend that your noncompliance was due to something beyond your control, I was in a coma, I was in the hospital, then it's deemed to be willful, right? No, you can have a mistake in good faith, right? What was the good faith mistake here? The good faith mistake is that they thought they were in the middle of a settlement discussion with this very large plaintiff to avoid the expense and difficulty of the entire federal lawsuit. That was a reasonable conclusion, you think? Yes, under these circumstances it was, where they continue to show up. They are not avoiding the suit. They are not avoiding the plaintiff. They believe they are still engaged in that discussion. You keep saying that, not avoiding the suit. What does that mean? It means they're- They didn't show up at the preliminary injunction hearing, they didn't. There was no attempt to contest the testimony or the evidence that was presented in support of the injunction, right? Well, there was- the district- correct, Your Honor. Okay. Correct. But the neglect, the mistake of the defendants should not rise to the level of a default judgment, which is the harshest sanction that the district court could put against these defendants. They should be entitled to have their day in court. And just go back to the speed of the docket, right? These people are served. They're in court. They're trying to get a lawyer. A month passes, just like that, default judgment. That's a very, very harsh result. And, you know, just as the court is well aware, the principles of- Issued by the clerk and a default judgment. Do you understand the difference? I am not confusing the difference, Your Honor, but that is when the clerk entered the default- There was a default judgment within a month. No, not at that point. That is a false statement, right? If I said that there was a default judgment entered on one month, that was a mistake on my part, Your Honor. Okay. What there was was a default entered. At that point, they're already behind the eight ball. Well, that's what puts people on notice that we're not fooling around anymore. And then people generally wake up and show up, get a lawyer, and then we then get to proceed. But this took nine months. Well, the motion that was made by what was noticed when appearance was entered, et cetera, was a motion to vacate that default. And that motion in the district court's default judgment denied that motion to vacate the default entered by the clerk. Right, because there had been no further attempt to litigate the case. They had no- They continued to not defend the case, even at the preliminary injunction. They had no opportunity at that point to put in an answer. The district court could have, right, under well-settled principles, decide cases on the merits. Default is not favored. Could have told these defendants, put in an answer, you're getting defaulted, and that's that. That's not what happened. I see I'm over my- No, I'm not over my time. That is not what happened. That is not what happened. And it just- The factors are- Just to go back to what the district court was supposed to find on the default. One of those things is a well-pled pleading. And I found something interesting. It's sort of buried in a respondent's brief all the way at footnote 5, page 28, where there's an admission that even the complaint- Right, footnote 5. The complaint inadvertently stated that New York 551 territory covered Elmont, New York, when it in fact covers Central Islip, New York. The verified complaint was not entirely correct. And defendant does have defenses. Well, so, law, the defenses do not have to have a likelihood of success. They simply have to have those defenses. And they do. And they're stated in our briefs. Just come back to this. Default is draconian. Default is the most severe. When you have a defendant who is present, not avoiding a suit, who makes a mistake, but who is prepared to continue the suit and defend themselves, the court should not default them and make it impossible. And then impose a preliminary injunction upon them, which is not just some money judgment they have to live with. But that is a restriction on their substantive rights to work, etc. I thank the court. Thank you. We'll now hear from Mr. Messenger. May it please the court, Jim Messenger. I represent JTH Tax, which does businesses liberty. I'm representing on the appeal, and I also represented them in all aspects of the district court proceeding. They're appealing from three orders. One is the granting of default judgment and the entrance of a permanent injunction. The second order is really the mirror image denying their motion to remove the default. They also appealed in their appeal notice from the court's issuance of a contempt. But nowhere in their brief do they even raise a sentence about that. So that would be waived, I suppose, except that we first have to decide whether we have jurisdiction. It seems that we don't get to say that it has been granted or waived. It seems that this is not final order, right? It's a contempt order. It was a part of a default judgment, final injunction, and the same day the court held them. But sanctions haven't been imposed yet, right? Sanctions were imposed. They were, I think, $250 for the first several days, $500 after that, $1,000. And there was an order for them to do a variety of things, which they never did. If I could just briefly, what I think would be helpful if I could just spend three or four minutes on the uncontested facts and then briefly address the legal standard. The contempt order also envisions disgorgement, right, of profits that were derived during the period of violating the preliminary injunction. Correct. So that hasn't happened yet, right? They were ordered to provide an accounting. Within a certain period of time, they never did. And then they filed this appeal, and the district court also awarded attorneys fees and told us to submit affidavits. We did, and when the appeal was filed, they effectively said they were going to halt those proceedings until the appeal was over. Right, so it seems to me that we don't have jurisdiction over the contempt order because it hasn't, the sanctions have not yet been determined. I mean, the sanctions have been ordered what they would be, but we haven't been able to go back when a follow-up hearing. Well, we don't know what the disgorgement is going to be. And we don't know what the disgorgement will be because we have not received the accounting. Just a couple facts that aren't in dispute that I think contradict the argument. The defendants were served with the complaint, the preliminary injunction papers, the magistrate's recommendation on the preliminary injunction, the district court's issuance of the preliminary injunction, the motion for contempt, and all pleadings. All the returns of service are in the record. Footnote three of our brief, we identify where they're in the record. Not only were they served with all these papers, but as the court has noted, on April 1, 2022, there was a status conference. Counsel appeared, not appear, but he participated, and it was a phone conference. Without filing a notice of appearance. He didn't file a notice of appearance. He said he was representing the defendant, Kukla, and his company, the competing company, ETC. April 14, the magistrate held the hearing on the preliminary injunction. Again, the law firm appeared. They didn't file a notice of appearance, but they were there. They didn't argue. And then December 13, 2022, there was an evidentiary hearing on the contempt. Counsel appeared. They didn't put on any witnesses. They didn't cross-examine any witnesses. And as the district court said, they didn't provide any persuasive argument, either in the opening or the closing. It's undisputed that the Apple law did not file an answer. They did not oppose the magistrate's recommendation for preliminary injunction. And they didn't file any opposition to the preliminary injunction brief. They don't claim, and the court correctly pointed out, that to get default, to oppose a default or get a default removed, you have to show there were circumstances beyond the control of the party. They don't even argue that in their brief. They don't even provide any explanation for their failure to answer, oppose the preliminary injunction, any of that. They don't claim sickness, illness, there's nothing. And they don't contest that they didn't participate in terms of presenting evidence at the contempt hearing. They claim that the conduct was willful. They have not offered any circumstances beyond their control or even any excuse. They really provide no explanation whatsoever. I just heard in the Appellant's argument that there were discussions of resolution. I looked at the record appendix sites for that. It's an affidavit saying he retained the law firm to negotiate. That's the evidentiary basis in the record for that claim. They do not have a meritorious defense. They really cite no record evidence whatsoever. And I could briefly address their arguments. I think they're clear in our brief. There were two franchise agreements. One was 2014 for Central Islip. One was 2017. Their first argument is the 2014 agreement expired before we filed the complaint. And that's correct. But we filed a complaint based on the 2017 franchise agreement for Elmont. That had not expired. In fact, I believe the non-compete expires today. The second argument they make is that the defendant, Kukla, is not liable because he did not prepare tax returns after the case was filed. But the district court found, and there's no contesting it, he owned the lease. He controlled the premises. There's a provision 10-H of the franchise agreement, which prohibits a franchisee from permitting somebody else to use the facility to compete. He did nothing to stop anybody from competing. And he had complete control. He was a lessee. The phone number is in his name, et cetera. They make a third argument that Carly Genti is not liable because he assigned the agreement to Kukla. If you look at that assignment, the assignment specifically says that Carly Genti remains bound by the post-termination covenants. And lastly, they say Harleen Genti is not liable because she was not a part of the franchise agreement. But the district court, in accordance with well-established precedent, said she was acting in concert with the defendants to operate ETC. She was effectively running ETC. She was the employee of ETC, the registered agent. And the district court correctly found that she was acting in concert. Independently, she would be liable for tortious interference, and she would be subject to an injunction for that reason as well. There's an argument that Liberty did not suffer prejudice. First of all, under the State Street Bank case, which is cited in our brief, if they don't show willfulness and they don't show meritorious defense, you don't even have to reach the prejudice argument. You only reach it if they make those- I understand that. What are you saying now that your client- And the claim is clearly prejudiced here because courts throughout the country have held this. They stayed at the same location, and they opened a competing business. In a franchise relationship, whenever a franchisee breaches and stays where they are, it lowers the value of franchises. It makes it almost impossible to obtain a replacement franchise. Well, it's not even that. It's that they didn't even comply with the preliminary injunction. Exactly. Or the contempt order. So the district court correctly found there was irreparable harm, and the last two years when we've been delayed in getting this proceeding resolved, that's continued irreparable harm. And that's prejudice under the standard in the courts. So, Your Honor, if there's any questions, I'd be glad to answer them, but I don't think they've satisfied at all the standard necessary to overturn the court's default judgment or permanent injunction. Thank you very much, Mr. Messenger. Thank you. We'll now hear from Mr. Turkel for two minutes of rebuttal. Mr. Turkel, could I ask you one quick question, please? You cite in your blue brief as an issue whether the lower court erred in granting the motion for contempt. You say the answer is yes, but I didn't see any argument offered about the contempt order, either there or in your reply brief. Did I miss something? If not, I would treat that as waived pending resolution of the jurisdictional question. No, I think there is argument, and part of it is, let's see, at page four of the reply, you see here that there is record evidence. Ordinarily, we say you have to present your arguments in your blue brief, in your opening brief. I didn't see any argument there. The contempt relies on the default judgment in the first place, so I think the argument goes that if the default is vacated, there would not be a contempt, and to the extent that the contempt is not directly addressed in the brief, that is why. So no separate issue? No separate issue. Well, there is, because there is record evidence in reply, Your Honor, that the appellants did in fact comply. This is at 810.92, that they did hand over telephone numbers and other materials, that they removed signage from the business location, things like that. But it all goes back to the original default. No, it doesn't. Contempt for violating a preliminary injunction has nothing to do with whether there is a default. Explain that to me. The preliminary injunction entered by the court was entered simultaneously with the default judgment. And it barred them from continuing to practice in tax preparation, right? Yes. And the contempt is that they didn't comply with that order. That is the contempt order, but the default already established, the default established that the appellants did in fact continue with that tax preparation when the defense of the defendants is in part that they didn't, that Mr. Kukla in particular was engaged in loan origination, other protected activity that was not in violation. So the default, the contempt, all simultaneous, all December 13th. The preliminary injunction enjoined your clients from doing certain things. But if you don't do that, then you're held in contempt. The argument from the appellants was that they were not in fact, Mr. Kukla in particular, was not in fact engaging in the tax preparation business. That has been his- And that's not in your opening brief, right? No, I believe that is. If it is not in the opening brief, it is certainly in their plan. It is in the record, Your Honor. At 1092. Thank you, Your Honor. Thank you. We will reserve decision. Thank you.